FILED
2022 Nov-10  PM 02:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GREG JACKSON, INDIVIDUALLY** | ) | |
| **AND ON BEHALF OF ALL OTHERS** | ) | |
| **SIMILARLY SITUATED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION CASE NUMBER:** |
| | ) | |
| **v.** | ) | **(CLASS ACTION)** |
| | ) | |
| **PIM BRANDS, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## INDIVIDUAL AND CLASS ACTION
## COMPLAINT AND DEMAND FOR
## JURY TRIAL

Plaintiff Greg Jackson ("Plaintiff"), files this class action complaint on behalf of himself and all others similarly situated in Alabama (the "Alabama Class") and the States of Alaska, Georgia, Idaho, Maine, Montana, Texas, and Wyoming (the "Consumer Fraud Multi-State Class"), alleging facts related to his own purchase based on personal knowledge and other facts based upon the investigation of counsel.

## NATURE OF THE ACTION

1. Plaintiff Greg Jackson is a resident of Shelby County, Alabama.  Defendant PIM Brands, Inc. is a Delaware corporation with a principal place of business at 1 Pim Plz, Park Ridge, NJ 07656.

2. This is a consumer protection class action arising from PIM Brands, Inc. ("PIM"), engaging in the practice of marketing "slack-filled" boxes of Sour Jacks gummies candy

("the Product" or "Sour Jacks").[1]    The practice of using oversized containers with substantial, nonfunctional, empty space inside is called "slack-fill" and is illegal under Alabama and Federal law.    Both Federal and Alabama laws have long prohibited nonfunctional slack-fill in food containers.    The policies behind the laws are based, in part, on finding that this practice leads consumers to believe that they are receiving a greater quantity of food product than is in the package (even if the quantity or weight is accurately displayed on the label).    Plaintiff's claims are based on the grounds that Defendant's conduct is deceptive and unfair, thus rendering the Product as unmerchantable for the purpose intended, in addition to other violations.

3. Defendant's Sour Jacks gummies candy contain a significant amount of nonfunctional slack-fill.    Specifically, the boxes consistently have an astounding 60+% empty space.    By violating Federal and Alabama slack-fill laws, Defendant's products are deemed "misbranded".

## **PARTIES**

4. Mr. Jackson is, and at all relevant times, was an adult residing in Shelby County, Alabama.    From time to time, he has shopped at the Dollar Tree stores in the Shelby County area.    In October 2021, Plaintiff visited the Dollar Tree store at 5075 U.S. Highway 31, Calera, Shelby County, Alabama and purchased several items, including two (2) boxes of the subject product; namely Sour Jacks Watermelon gummy candy.    Said product is/was boxed in 4" x 6" boxes – commonly called "Theater Box Candy".

---

[1] It has not gone unnoticed by Plaintiff that the "Sour Jacks" name is very similar to the more established "Sour Patch" name.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and most members of the proposed class are citizens of states different from Defendant.  This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

6.  Venue is proper in this judicial district because Defendant conducts substantial business in this District and the events giving rise to Plaintiff's claim occurred in this District; the unlawful conduct complained of herein occurred in this District.

## STATEMENT OF FACTS

7.  Plaintiff's individual claim and his claim on behalf of all others in Alabama and in Georgia, Idaho, Wyoming, Texas, Montana, Alaska, and Maine who are similarly situated is based on Defendant violating Federal and Alabama law.  Defendant markets several varieties of Sour Jacks gummy candy.  Upon information and belief, all are in violation of Alabama's Food Code, the Federal Food, Drug and Cosmetics Act and the FDA regulations promulgated thereunder.

8.  Among Plaintiff's purchases aforementioned were two (2) boxes of the under filled gummies candy:

FRONT                                    BACK




Plaintiff fully expected that the gummies candy boxes contained more candy than some of the smaller boxes of candy placed on the store shelves alongside the subject gummies. Hence, he purchased two.  In fact, Sour Jacks boxes being slightly bigger than some of the other competitive boxed candies had more slack-fill than its competitors.  Furthermore, the Sour Jacks were displayed on lower shelves more accessible for children to reach. Upon Plaintiff purchasing the Product and opening same, he was more than amazed at its dire contents.

9.  A representative comparison of the competitive candy boxes which are/were marketed alongside the Defendant's product at the time of Plaintiff's and other consumers' purchasing same were/are:

| Name | % of candy | % slack-fill | box size |
|------|------------|--------------|----------|
| Jujy Fruits | 87% | 13% | 3.25" x 5.75" |
| Fruit Chews | 68% | 32% | 3.25" x 5.5" |
| Dots | 74% | 26% | 3.5" x 6" |
| Sour Patch Kids | 54% | 46% | 3.75" x 6" |
| Sour Jacks | 38% | 62% | 4" x 6" |

10. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein.  Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for apparent deceptive reasons.

11.  Defendant falsely represent the quantity of candy in each of the Products' opaque boxes through its packaging.  The size of each box leads the reasonable consumer to believe he or she is purchasing a box full or near-full of candy product when, in reality, what he or she actually receives is only a small percentage of what is represented by the size of the box.

12.  Plaintiff and Class members were injured as the result of Defendant's deceptive conduct because they paid money for less Product than Defendant represented they would be receiving.  Plaintiff and class members would not have purchased the Product had they known of the true contents amount.  Since Plaintiff and class members would not have agreed to this exchange had they known the truth, they were deprived of the benefit of their bargain, receiving less candy than was promised to them by the size of the Product packaging.

13. In order for Plaintiff and Class members to be made whole, they must be compensated in an amount equal to the proportion of the purchase price equal to the percentage of non-functional slack-fill in the Product, which is equivalent to the amount of product for which Plaintiff and the Class paid but which Defendant did not deliver. *See Lazaroff v. Paraco Gas Corp.*, 2011 NT Slip Op 52541(U), ¶ 6, 38 Misc. 3d 1217(A), 1217A, 967 N.Y.S.2d 867, 867 ("Plaintiff alleges that, had he understood the true amount of the product, he would not have purchased it, and that he and the purported members of the class paid a higher price per gallon/pound of propane and failed to receive what was promised and/or the benefit of his bargain, i.e., a full 20 pound cylinder and the amount of propane he was promised . . . Thus, plaintiff has properly alleged injury. Accordingly, the court finds that the plaintiff has stated a claim for a violation of GBL § 349."); *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 406 (E.D.N.Y. 2010) ("Plaintiff alleges that, had she understood 'the true amount of the product,' she 'would not have purchased' it. [ ]. Thus, Plaintiff has properly alleged injury. Accordingly, Plaintiff's § 349 claim survives Defendant's motion.); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("Indeed, in his Complaint, Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.' . . . Case law makes it clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive.").

## <u>REASONABLE CONSUMER</u>

14. Even by Plaintiff and other reasonable consumers of the Product having a reasonable opportunity to review, prior to the point of sale, other representations of

quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate into a quantity of candy product meaningfully different from their expectation of a quantity of candy product commensurate with the size of the box.

15.   The amount of product inside any product's packaging is material to any consumer seeking to purchase that product.   The average consumer spends only 13 seconds deciding whether to make an in-store purchase, which decision is heavily dependent on a product's packaging, including the package dimensions.  Research has demonstrated that packages that seem larger are more likely to be purchased.   Furthermore, it is known by Defendant and throughout the business of candy marketing that the primary purchasing public are children who obviously select the bigger box of candy, i.e., Defendant's Sour Jacks.

16.   As to the point of sale, Sour Jacks gummies candy packaging does not allow for a visual or audial confirmation of the contents of the same.   The Product's boxed packaging prevents a consumer from observing the contents before opening.  Even if a reasonable consumer were to "shake" the Product before opening the box, the reasonable consumer would not be able to discern the presence of any nonfunctional slack fill, let alone the 60+% nonfunctional slack-fill that is present in the Product.[2]  Feeling of the box does not allow a customer to judge its contents either.

17.   Importantly, the other information that Defendant provides about the box's contents on the front and back labels of the Product does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Product

---

[2] Gummy candy does not shake. Defendant PIM wraps Sour Jacks gummies in a cellophane-like wrap inside each box which hampers a purchaser from shaking same before purchasing. A reasonable consumer would not be shaking packages anyway.

as compared to the size of the box itself.  For instance, the front of the Product's packaging does not have any labels that would provide Plaintiff with any meaningful concept of the product's quantity in relation to the box size, nor other insight as to the amount of candy to be expected, such as a fill line or actual size depiction accompanied by the words "actual size".  The Defendant does list on the front of each package: "NET WT 3.5 oz (99g)", which is meaningless to a reasonable consumer as to the amount of slack-fill.  Said statement of weight coupled with the back of the box stating that the box contains "about 9 pieces" does not inform a reasonable consumer of the boxes' 60+% air.

18. Disclosures of net weight or serving size in ounces or grams does not allow the reasonable consumer to make any meaningful conclusion about the quantity of candy contained in the Product's boxes.  Thus, the net weight disclosures on the Product does not give consumers an accurate expectation regarding product fill level.

19. As the FDA explains in the Federal Register:

> Consumers develop expectations as to the amount of product they are purchasing based, at least in part, on the size of the container.  The congressional report that accompanied the FPLA stated: "Packages have replaced the salesman.  Therefore, it is urgently required that the information set forth on these packages be sufficiently adequate to apprise the consumer of their contents and to enable the purchaser to make value comparisons among comparable products" (H.R. 2076, 89th Cong., 2d sess., p. 7 (September 23, 1966)).  Thus, packaging becomes the "final salesman" between the manufacturer and the consumer, communicating information about the quantity and quality of product in a container.  Further, Congress stated (S. Rept. 361, supra at 9) that "Packages only partly filled create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label."

58 Fed. Reg. 64123-01, 64131 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100) (emphasis added).

20. Furthermore, Research indicates that 90% of consumers make a purchase after only visually examining the front of the packaging but without physically having the product in their hands.[3]

21. The other information that Defendant provides about content quantity on the front label and back label of the Products does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Products as compared to the size of the box itself.

22. Consumers rarely consult quantity indications on packages but use alternative methods, such as visual impressions of the package size, total package price, or previous purchase experience, to judge product quantity and to calculate product value.[4]

23. Defendant's obvious intent was/is to deceive consumers, especially children, into buying the Product while saving the expenses of adequate contents. Plaintiff and class members would not have purchased the Product had they known that the Product contained immense slack-fill that serves no functional or lawful purpose.   Attached hereto as Exhibit A is a visual of the typical Slack-fill of the product.  Defendant PIM uniformly under-fills the Product's boxes, rendering 60+% of each box empty, which serves no functional or lawful purpose, and then seals each box with heated glue.

24. Congress has recognized that the law preventing misleading packaging is "intended to reach deceptive methods of filling . . . where the package is only partly filled and, *despite the declaration of quantity of contents on the label*, created the impression that it contains more food than it does."  S. Rep. No. 493, 73d Cong., 2d sess. 9 (1934) (emphasis added).

---

[3] Clement, J.,  *Visual influence on in-store buying decisions: an eye-track experiment on the visual influence of packaging design*, 23 **Journal of Marketing Management**, 917-928 (2007)

[4] Gupta K, O. et al., *Package downsizing: is it ethical?* 21 AI & Society 239-250 (2007)

25. In addition, the FDA, in promulgating an identical federal regulation, 21 C.F.R. § 100.100, concluded that an accurate disclosure of a product's net weight on the product packaging does not exempt a manufacturer from complying with slack-fill regulations, finding that "the presence of an accurate net weight statement does not eliminate the misbranding . . ." *Misleading Containers; Nonfunctional Slack-Fill*, 58 Fed. Reg. 64,123, 64,128 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100). Moreover, the FDA has emphasized that "[t]o rule that an accurate net weight statement protects against misleading fill would render the prohibition against misleading fill . . . redundant." *Id.* at 64,129.

26. Defendant marketed the Product in a systematically misleading manner by representing such as adequately filled when, in fact, such contained an unlawful amount of empty space or "slack-fill." Defendant PIM underfills the Product for no lawful reason. The only purpose of this practice by Defendant was to save money (by not filling the boxes) in order to deceive consumers into purchasing Defendant's Products and enhance profits over its competitors. Defendant's slack-fill scheme not only has harmed thousands of consumers in Alabama to date but continues to harm thousands of consumers outside Alabama for the Defendant's profitability.

27. Plaintiff and the Class Members accordingly suffered injury in fact caused by the false, unfair, deceptive, unlawful, and misleading practices set forth, as herein recited.

## APPLICABLE LAW

28. Except for minor and irrelevant exclusions, pursuant to Ala. Admin. Code r. 420-3-20-.02 (Ala. Admin. Code [2021 Ed.]), Alabama has adopted as law in Alabama the federal food related CFRs (Code of Federal Regulations) referenced hereafter. All following references to the CFR and Federal Food, Drug and Cosmetic Act (FDA) are thereby law in Alabama.

29.  **Slack-Fill Violates Federal Law.**    Federal statutes and regulations prohibit nonfunctional slack fill.  The Federal Food Drug and Cosmetic Act, 21 U.S.C. §403(d) and 21 C.F.R. §100.100 provide:

> "In accordance with Section 403(d) of the [Food Drug and Cosmetic Act], a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.
>
> (a)    A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill.  Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein.  Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:
>
> (1) Protection of the contents of the package;
>
> (2) The requirements of the machines used for enclosing the contents in such package;
>
> (3) Unavoidable product settling during shipping and handling;
>
> (4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;
>
> (5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or a durable commemorative or promotional packages; or
>
> (6) Inability to increase the level of fill or to further reduce the size of the package (e.g., where some minimal package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant device).

31. The FDA deems a product containing nonfunctional slack fill to be "misbranded" within the meaning of the Food Drug and Cosmetic Act.  As such, the sale of the packages of Defendant's boxes with only 38% candy contents is prohibited under 21 U.S.C. §331. Defendant's boxes of the product do not meet any of the following six exemptions under applicable law:

(a) Defendant's slack-fill does not protect the contents of the packages.  The 38% of Sour Jacks gummies per box with each contents individually plastic wrapped, does not gain any additional protection from the extra space in the box. If the boxes were filled, i.e. the sack in each box was commensurate with the size of the packaging, the bag would have less room to move around during shipping and be less likely to sustain damage. See 21 CFR §100.100(a)(1).

(b) The requirements of packaging machines do not justify or require the slack-fill. Defendant's boxes are sealed with hot glue.  As such, upon information and belief, the equipment used to manufacture and seal the boxes does not breach the inside of PIM's boxes during the packaging process.  The hot glue is applied to an exterior flap of the box which is then sealed by a second exterior flap that is folded down onto the glued surface.  Neither the hot glue nor the sealing equipment requires a substantial amount of slack-fill in the box during the manufacturing and packaging processes.  See 21 CFR §100.100(a)(2).[5]

(c) The slack-fill is not caused by product settling during shipping and handling. Given the product's density, shape, and composition, any settling occurs immediately at the point of filling the box, if at all. Upon information and belief,

---

[5] The above-mentioned competitors' boxed candy (¶, 9) is packaged using identical fill and heated glue enclosing process to those of Defendant's gummies.

Defendant PIM wraps the Sour Jacks gummies before placing them in the boxes, which are then sealed. No additional product settling occurs during subsequent shipping and handling (*See* 21 CFR §100.100(a)(3).

(d) The slack-fill space is not needed to perform a specific function, such as preparing the food. The wrapped product is removed from the packaging for consumption (e.g., the candy is not prepared or consumed in the cardboard packaging box). *See* 21 CFR §100.100(a)(4).

(e) Defendant's packaging itself lacks independent value from the food it contains. The cardboard packaging is not a commemorative item nor is it a reusable container which is part of the presentation of the food, nor is it intended for use after the food is consumed. *See* 21 CFR §100.100(a)(5).

(f) The slack-filled package was not necessary to prevent pilfering nor accommodate required food labeling. Indeed, Defendant PIM should be able to double or possibly triple the product in each box. Alternatively, Defendant PIM could readily reduce the size of the containers to eliminate the nonfunctional slack-fill and deception. *See* 21 CFR §100.100(a)(6).

32. Thus, there is no lawful reason for the substantial non-functional slack-fill contained in Defendant's packaging of Sour Jacks gummies candy. Defendant effectively deceives reasonable consumers (especially children) because its packaging is substantially larger than necessary to contain the candy included per box.

33. Defendant failed to comply with consumer protection and packaging statutes designed to prevent this deception, and relied on the larger than normal box to further this deception even in the face of other lawsuits against similar companies, including two

certified class actions for similar violations, which were based on slack-fill of candy boxes of much less egregious facts.

34.   Defendant, upon becoming involved with the manufacture, advertising, and sale of the Product, knew or should have known that its sale of the Product, specifically by deceptively causing customers to believe and expect that the Product's box size was indicative of the contents amount, was false, deceptive, and misleading.   Hence, Defendant affirmatively and knowingly misrepresents the amount of candy product contained in the Products' boxes in order to convince the public and the Products' consumers to purchase the Products all to the financial damage and detriment of the Plaintiff and the consuming public, which damage has occurred in this claim and continues presently to consumers.  All to Defendant's financial gain.

35. Defendant is obviously creating a deception that its candy boxes contain an amount of candy commensurate with the size of the box, though the box actually contains substantial nonfunctional, unlawful slack-fill.  As a result, Defendant's consistent and uniform marketing and packaging of the Product is false, misleading, and/or likely to deceive in violation of Alabama law and federal CFR regulations.

36.   Accordingly, Defendant PIM chose a certain size box for its Product to convey to consumers that they are receiving a substantial amount of candy commensurate with the size of the box.   Such representations constitute violations of law giving rise to the following.

## CLASS ALLEGATIONS

37.   Plaintiff individually, and for the Classes, incorporates by reference all preceding paragraphs as though fully set forth herein.

38.  Plaintiff brings this case individually, and as a class action, pursuant to R. 23, Fed. R. Civ. Proc., on behalf of all persons who have purchased Defendant's Sour Jacks gummies in Alabama and as covered immediately below.

39. Plaintiff seeks to represent the following Classes:

- **Alabama Class: All persons residing in the  State of Alabama who purchased Sour Jacks gummies in the last six (6) years.**

and:

- **Consumer Fraud Multi-State Class: All persons residing in the States of Alaska, Georgia, Idaho, Maine, Montana, Texas, and Wyoming who purchased Sour Jacks gummies in the last six (6) years.**

Excluded from the Classes are the following:

i.      Any and all federal, state, or local governments, including but not limited to their department, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

ii.     Individuals, if any who timely opt out of this proceeding using the correct protocol for opting out;

iii.    Current or former employees of Defendant;

iv.     Individuals, if any, who have previously settled or compromised claim(s) relating to Sour Jacks; and

v.      Any currently sitting federal judge and/or person within the third degree of consanguinity to any federal judge.

40.  Plaintiff seeks a judgment on a Class-wide basis for himself and the Class under the following Counts.

41. Defendant violated the rights of each Member of the Class in the same fashion based upon Defendant's uniform actions in its marketing, producing, selling, design and distributing of its Sour Jacks gummies candy.

42. Plaintiff should be approved to maintain this action as a class action for the following reasons:

43. **Numerosity:**  Members of the Class are so numerous that individual joinder is impracticable.  The proposed Class contains thousands of Members.  The Class is therefore sufficiently numerous to make joinder impracticable, if not impossible.

44. **Common Questions of Fact and Law Exist:**  Common questions of fact and law exist as to all Members of the Class, including whether Defendant marketed, designed, produced and distributed the Product with its deceptive packaging representations, implied and expressed warranties and breaches of agreement in fact and implied.

45. **Typicality:**  Plaintiff's claims are typical of the claims of the Class.  Alabama and federal food law from the framework of Defendant's legal requirements as reasonable and necessary standards by which Defendant is to comply.  Violations of same impose the following causes of action.  Furthermore, Plaintiff and all Members of the Class sustained monetary and economic injuries arising out of Defendant's unlawful conduct.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all putative Class Members.

46. **Adequacy:**  Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class – all seek redress and prevention for the same unlawful conduct.  Plaintiff has retained Counsel who is competent and highly experienced in complex class action litigation, and he intends to prosecute this action

16

vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.  Plaintiff's claims, like those of the Class, are antagonistic to Defendant.

47. **Predominance:**  Common questions of fact and law predominate over any questions affecting individual Class Members.

48. **Superiority:**  A class action is superior to other available means of fair and efficient adjudication.  The injury suffered by each individual Class Member is very small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be impossible for all Members of the Class to effectively redress the wrongs done to them on an individual basis.  Therefore, a class action is the only reasonable means by which Plaintiff and the Class may pursue their claims.  Moreover, even if the Members of the Class could pursue such individual litigation, the court system could not.  Individualized litigation increases the delay and expense to all parties, and to the court system, by the complex legal and factual issues of this case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

49. Plaintiff brings this action for himself and on behalf of a class of individuals in the State of Alabama and the States of Alaska, Georgia, Idaho, Maine, Montana, Texas, and Wyoming who purchased said Sour Jacks gummies.

<u>**COUNT I**</u>

**DECEPTIVE PRACTICE STATUTES**

**(On Behalf of the Plaintiff and the Class)**

Plaintiff adopts all of paragraphs above as if fully set out herein.

50. Mr. Jackson, for himself and on behalf of the class and subclass, brings this action

under the consumer protection statutes of Alaska, Georgia, Idaho, Maine, Montana, Texas, and Wyoming:

a.     Alabama Deceptive Trade Practices Act, ALA. Code § 8-19-1, *et. seq.*;

b.     Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

c.     Georgia Fair Business Practices Act, § 10-1-390 *et. seq.*;

d.     Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

e.     Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

f.     Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

g.     Texas Deceptive Trade Practices Act, Texas Stat. Ann. § 17.41, *et seq.*; and

h.     Wyoming Consumer Protection Act, Wyoming Stat. Ann. §40-12-101, *et seq.*

## <u>COUNT II</u>

### BREACH OF WARRANTY

### (On Behalf of the Plaintiff and the Class)

51. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

52.  Plaintiff and the class members formed contracts with Defendant at the time they purchased the product from Defendant. The terms of such contracts included implied promises and affirmations of fact by Defendant that said products were being marketed in compliance with applicable law and that the product contained contents commensurate with the size of the container. Further, the Defendant's presentation of the Product's contents amounted(s) to a breach of warranty.

53. The implication of said marketing is that a requirement of law became part of the basis of the bargain, and is part of the contract between Defendant on the one hand and Plaintiff and the class members on the other hand.

54. The implied affirmation made by Defendant was made to induce Plaintiff and the class members to purchase Sour Jacks gummies.

55. Defendant intended that Plaintiff and the class members would rely on said affirmations in making their purchases, and Plaintiff and the class members did so.

56. All conditions precedent to Defendant's liability under these warranties have been fulfilled by Plaintiff and the class members (a) by paying for the goods at issue and (b) giving Defendant sufficient statutory notice before this filing.  Additionally, Defendant had actual and/or constructive notice of its own false marketing and sales practices but to date have taken no action to remedy its breaches of implied or express warranty.

57. Defendant breached the terms of the warranty because the product purchased by Plaintiff and the class members did not conform to the implied affirmations of fact by Defendant – that they were being sold according to law by representing candy's contents as being commensurate with the size of the container.  In fact, they were not.

58. As a direct and proximate result of Defendant's breach of warranty, Plaintiff and the class members have been injured and have suffered actual damages because the subject Sour Jacks gummies upon attempting to use, same were rendered not merchantable for the intended purpose by violating federal and Alabama food law, this causing Plaintiff and the class to be damaged by their not receiving the benefit of the bargain.

## COUNT III

### BREACH OF CONTRACT

### (On Behalf of the Plaintiff and the Class)

59. Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

60. Plaintiff and the class members entered into implied agreements with Defendant.

61. The agreements provided that Plaintiff and the class members would pay Defendant for its boxed candy.

62. The contracts further provided that Defendant would provide Plaintiff and the class members subject candy as required by law with contents commensurate with its containers' size.

63. Plaintiff and the class members paid Defendant for the Product that they purchased, and satisfied all other conditions of the agreements.

64. Defendant breached the implied agreements with Plaintiff and the class members by failing to comply with the material terms of providing the candy as required by law by being under-filled as above recited.

65. As a direct and proximate result of Defendant's breach, Plaintiff and the class members have been injured and have suffered actual damages due to the candy being less than as represented.

## COUNT IV

### NEGLIGENCE

### (On Behalf of the Plaintiff and the Class)

66. Plaintiff repeats and incorporates all paragraphs of this Complaint as if fully set forth herein.

67. Plaintiff alternatively claims that Defendant in a negligence manner marketed and sold to Plaintiff and the class the Product heretofore mentioned.

68. Plaintiff claims that said marketing of Sour Jacks gummies without regard to the legal requirements, was done and is presently continuing in a negligent manner and as a proximate result thereof, the Plaintiff and the class were damaged as herein claimed.

69. Plaintiff further alleges that said marketing of Sour Jacks gummies in a negligent manner, and possibly in a wanton manner, is violative of Alabama and federal legal requirements and should be restrained and be caused to cease.

70. Plaintiff prays that due to the damage proximately caused by Defendant to Plaintiff and the class that relief is demanded as hereinafter requested.

## COUNT V

## WANTONNESS

## (On Behalf of the Plaintiff and the Classes)

71. Plaintiff repeats and incorporates all paragraphs of this Complaint as if fully set forth herein.

72. Plaintiff claims that Defendant in a wanton manner has marketed and is marketing to Plaintiff and the classes the Products heretofore mentioned.

73. Plaintiff claims that said marketing of the subject product without regard to the legal requirements, was done and is presently continuing in a wanton manner and as a proximate result thereof, the Plaintiff and the classes were damaged as herein claimed.

74. Plaintiff further alleges that said marketing by Defendant of misbranded product in a wanton manner, is violative of legal requirements throughout the United States and should be restrained and be caused to cease, as hereinafter claimed.

75. Plaintiff prays that due to the damage proximately caused by Defendant to Plaintiff and the classes that punitive monetary relief is also demanded as hereinafter requested.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and that judgment be entered in favor of Plaintiff and the class members against Defendant as follows:

A.      Enter an order certifying the proposed classes, designating Plaintiff as the representative for the class members that he seeks to represent, and designating the undersigned as class counsel;

B.      Declare that Defendant is financially responsible for notifying all class members of Defendant's deceptive receipt, shipping, advertising, sales, and marketing practices alleged herein;

C.      Award damages to Plaintiff and members of both abovementioned classes in an amount appropriate to compensate them for purchasing the Product;

D.      Find that Defendant's conduct alleged herein be adjudged and decreed in violation of the law cited above;

E.      Grant injunctive and declaratory relief to end the challenged conducts;

F.      Grant reasonable attorneys' fees pursuant to law and as otherwise permitted by statute, with reimbursement of all costs and expenses incurred in the prosecution of this action; and

G.      Grant such other relief as this Court deems just and proper.

Dated November 10, 2022                 Respectfully submitted,

BY:     /s/ Charles M. Thompson
        Charles M. Thompson, Esq. THO019
        ASB-6966-P77C
        101 Mohawk Drive
        Trussville, AL 35173
        (205) 995-0068
        Fax (866) 610-1650
        Email: cmtlaw@aol.com


**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**


        /s/ Charles M. Thompson
        Charles M. Thompson
        Attorney for Plaintiff


**SERVE DEFENDANT via certified mail at the following:**

PIM Brands, Inc.
500 Pierce Street
Somerset, N.J. 08873-1270